UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| BRIAN GALLANT, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TD BANK, N.A. and EARLY WARNING SERVICES, LLC d/b/a ZELLE,<br><br>Defendants. | Case No.: 1:2022-cv-21714<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Brian Gallant, individually and on behalf of all others similarly situated, hereby brings this Class Action Complaint against Defendants TD Bank, N.A. ("TD Bank") and Early Warning Services, LLC d/b/a Zelle ("Zelle") (collectively "Defendants") and alleges as follows:

## INTRODUCTION

1. This lawsuit is brought as a class action on behalf of Plaintiff and thousands of similarly situated TD Bank accountholders who have been deceived into using the Zelle money transfer service by Defendants' misrepresentations and omissions, in marketing materials, regarding the true operation and risks of that service. These risks include the real and repeated risk of insufficient funds fees ("NSF fees") or overdraft fees ("OD Fees") imposed by TD Bank as a result of Zelle transfers from consumers' checking accounts.

2. Defendants market Zelle to TD Bank accountholders as a way for consumers to send money they have in their account fast and "free," and that the service "won't cost you any extra money for the transaction." In short, Defendants market Zelle as an effortless, totally free way to send money. This is false. In fact, there are huge, undisclosed risks of using the service.

3. Moreover, Zelle in some cases operates as a credit device, sending money consumers don't have at the cost of high OD Fees assessed by their banks. Transactions may be

approved even when there are insufficient funds in an account. But Defendants never disclose that Zelle acts as a credit device, nor warns that it can do so.

4. Use of the Zelle service cause unsuspecting consumers like Plaintiff to incur significant overdraft and NSF fees on their linked bank accounts.

5. Unfortunately, Zelle's operation, along with deceptive and incomplete marketing materials promulgated by Defendants, means that users like Plaintiff end up paying huge amounts of bank fees, which Defendants' marketing falsely assures users they will not receive and/or fails to warn users about.

6. Defendants tout the Zelle service as convenient, simple, and totally free. But it misrepresents and fails to disclose that overdraft and NSF fees are a likely and devastating consequence of the use of the Zelle service.

7. Defendants prominently tout Zelle as offering "free" and "won't cost you any extra money for the transaction" money transfers. In light of these misrepresentations, Plaintiff and other reasonable consumers have no idea the service comes with these damaging risks.

8. These risks are known to Defendants but is omitted from all of their marketing.

9. Had Plaintiff and the Class members known of the true operation and risks of the Zelle service—risks Defendants alone were aware of and actively misrepresented—they would not have signed up for and used the Zelle service.

10. Plaintiff and the Class members have been injured by Defendants' practices. Plaintiff brings this action on behalf of himself, the putative Class, and the general public. Plaintiff seeks actual damages, punitive damages, restitution, and an injunction on behalf of the general public to prevent TD Bank and Zelle from continuing to engage in its illegal practices as described herein.

## PARTIES

11. Plaintiff Brian Gallant is a citizen and resident of Miami-Dade County, Florida.

12. Defendant TD Bank, N.A., is federally chartered bank with its principal place of business in Cherry Hill, New Jersey.

13. Defendant Early Warning Services, LLC d/b/a Zelle, is a limited liability company established under the laws of Delaware with its principal place of business in Scottsdale, Arizona.

## JURISDICTION AND VENUE

14. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(d)(2), because the matter in controversy exceeds $5,000,000, exclusive of interest and costs, and is a class action in which at least one member of the class is a citizen of a different State than the Defendants. The number of members of the proposed Classes in aggregate exceeds 100 users. 28 U.S.C. § 1332(d)(5)(B).

15. This Court has personal jurisdiction over the Defendants because they regularly conduct and/or solicit business in, engage in other persistent courses of conduct in, and/or derive substantial revenue from products and/or services provided to persons in this District.

16. Venue is proper in this District pursuant to 28 U.S.C. § 1391, because because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District, and Defendants transact business in this District.

## FACTUAL ALLEGATIONS

**A.  Overview**

17. Created in 2017 by the largest banks in the U.S. to enable instant digital money transfers, Zelle is the country's most widely used money transfer service. Last year, people sent $490 billion in immediate payment transfers through Zelle.

18. The Zelle network is operated by Early Warning Services, a company created and owned by seven banks: Bank of America, Capital One, JPMorgan Chase, PNC, Truist, U.S. Bank and Wells Fargo. It is free for existing TD Bank accountholders to sign up with Zelle, and in fact Zelle is integrated into the websites and mobile apps of TD Bank. In marketing and within the website and app itself, Defendants encourage TD Bank accountholders to sign up for the Zelle service—a sign up that occurs quickly within the TD Bank website or mobile app. During that sign-up process, a user provides basic information to Zelle to link into the Zelle network.

19. TD Bank does not provide the TD Bank deposit agreement that purportedly governs the account during the Zelle sign up, and does not affirmatively provide any terms of service that govern the Zelle product.

20. Signing up for Zelle allows the fast transfer of account funds to other Zelle users.

**B.      Defendants Falsely Market Zelle as a Fast and Free Way to Transfer Money**

21. In its marketing about Zelle and during the Zelle signup process within TD Bank's mobile app or website, Defendants make repeated promises that Zelle is a fast and "free" way to send money. For example, TD Bank's website and mobile interface state:

## Send Money with Zelle® is easy, fast and free for TD customers

22. Defendants also promise about Zelle: "Move funds between your accounts and schedule transfers, plus use Send Money with Zelle to pay friends quickly, easily and for *free*" (emphasis added).

23. At no time in its marketing or during the sign-up process do Defendants warn potential users of the true risks of using the Zelle service—including the risk of incurring NSF and overdraft fees by TD Bank. To the contrary, in its marketing and during the sign-up processes,

Defendants repeatedly tout Zelle as a vehicle for simple, fast and free money transfers—*without a credit feature*.

24. But Zelle's services can cause unsuspecting consumers like Plaintiff to incur massive fees on their linked bank accounts—fees imposed by TD Bank. TD Bank is thus well aware of the risk that such fees will occur.

25. Defendants misrepresent (and omit facts about) the true nature, benefits, and risks of the Zelle service, the functioning of which means that users are at extreme and undisclosed risk of expensive bank fees when using Zelle. Had Plaintiff been adequately informed of these risks, he would not have signed up for or used Zelle.

26. As alleged herein, Plaintiff had no idea that Zelle transfers could cause $35-each overdraft fees from TD Bank, and was never reasonably informed thereof.

27. In marketing and promotions, Defendants describe the Zelle service as simple, convenient, and easy—a no-fee way for consumers to transfer money.

28. Defendants' marketing never warns consumers of the extreme and crushing NSF and overdraft fee risk of using the service.

29. Defendants conceal from users the punishing risk of NSF and overdraft fees on small dollar Zelle transactions.

30. Defendants' marketing materials—including within TD Bank's app and website—never disclose these risks and material facts, instead luring consumers to sign up for and use the service with promises of ease and lack of any cost.

31. Defendants know that the Zelle service is likely to cause its accountholders to incur large bank fees.

32. Defendants' representations regarding Zelle—which all users view during the sign-up process—are false and contain material omissions.

### C. Defendants Never Inform Consumers Zelle has a Credit Feature

33. As occurred with Plaintiff, Zelle transfers often cause hefty overdraft or NSF Fees from accountholders' banks or credit unions.

34. When a Zelle transfer occurs *despite insufficient funds on an account*, a user is being loaned funds to execute such a transfer.

35. While touting Zelle, Defendants never informed Plaintiff and other reasonable consumers that Zelle had a credit feature, wherein the Bank would loan users money to effectuate transfers for which they did not have sufficient funds. To the contrary, Defendants misrepresented that only funds already possessed by accountholders could be transferred via Zelle.

36. When a bank pays an overdraft requested on funds transferred via Zelle, it is extending credit. It is very expensive credit, indeed, according to the FDIC:

> For almost all study population banks operating an automated overdraft program, the main fee associated with the program was an NSF usage fee. Usage fees reported by these banks ranged from $10 to $38; the median fee was $27, charged on a per-transaction basis in almost all cases. In this context, a $27 fee charged for a single advance of $60 that was repaid in two weeks **roughly translated into an APR of 1,173 percent.** Many surveyed banks (24.6 percent) assessed additional fees on accounts that remained in negative balance status in the form of flat fees or interest charged on a percentage basis.

FDIC Study of Bank Overdraft Programs, 2008 (emphasis added).

37. But Defendants never warn users that Zelle may act as a credit device, either in marketing materials or during the sign-up process.

38. Plaintiff and other reasonable consumers were not informed that Defendants would make Zelle transfers for which they had insufficient funds—in effect, that TD Bank and Zelle would seek a loan on his behalf.

39. In fact, TD Bank makes marketing representations directly to the contrary. For example:

> Move money in the moment.
>
> With *Zelle*, you can move money from your account to someone else's within minutes, so it's important you know and trust the person you're sending it to. Whether you're settling up IOUs before heading back from the beach or paying the babysitter before curfew hits, **your money is where you need it to be**, when you need it to be.

(emphasis added).

40. And again:

> **Your money travels safely** from the minute you hit send to the minute it hits their account. Straight from you to them. So you get peace of mind and so does your nanny, your neighbor, and your friend Ned who sold you his old TV.

(emphasis added).

41. The references to "your money" can have only one meaning: a Zelle transfer moves funds already possessed and owned by the accountholder—not loaned funds from the Bank.

42. None of this needed to happen, since TD Bank maintains the capacity to refuse to make Zelle transfers like Plaintiff's, for which there are not sufficient funds.

43. TD Bank tracks in intimate detail its accountholders' balances, giving the bank unique access to the complete financial picture of a consumer on an hour to hour basis.

44. In sum, TD Bank has the capability—which it uses routinely—to withhold processing transactions it knows will be futile—as Defendants promised it would do in Zelle marketing materials.

45. When TD Bank knows the processing of a given electronic transaction will be futile—that is, will serve no other purpose than to create bank fees—TD Bank has the technological capability to simply not make the transfer.

**D.  Plaintiff Gallant's Experience**

46. When Plaintiff signed up for Zelle he was not informed that Zelle's service had a significant "catch" and that significant fees and costs could result from use of this supposedly "free" service.

47. While Plaintiff has sometimes used Zelle without incident, on other occasions he has incurred expensive overdraft fees or NSF Fees from TD Bank as a result of using the service—penalties that far outweigh the benefits of the service.

48. For example, on May 20, 2021, Plaintiff transferred $150 using Zelle through TD Bank's mobile app.

49. That transfer resulted in a $35 OD/NSF Fee.

50. On August 30, 2021, Plaintiff transferred $120 using Zelle through TD Bank's mobile app.

51. That transfer resulted in a $35 OD/NSF Fee.

## CLASS ALLEGATIONS

52. Plaintiff brings this action individually and as representatives of all those similarly situated, on behalf of the below-defined Classes:

> All TD Bank accountholders who used the Zelle Service and incurred overdraft or NSF Fees as a result of a Zelle transaction on their account (the "Class").

> All TD Bank accountholders in Florida who used the Zelle Service and incurred overdraft or NSF Fees as a result of a Zelle transaction on their account (the "Florida Subclass").

53. Excluded from the Classes are Defendants and its affiliates, parents, subsidiaries, employees, officers, agents, and directors. Also excluded are any judicial officers presiding over this matter and the members of their immediate families and judicial staffs.

54. This case is appropriate for class treatment because Plaintiff can prove the elements of their claims on a class wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

55. **Numerosity:** The members of the Classes are so numerous that joinder of all members would be unfeasible and impracticable. The precise membership of the Classes is unknown to Plaintiff at this time; however, it is estimated that the Classes number is greater than one hundred individuals. The identity of such membership is readily ascertainable via inspection of Defendants' books and records or other approved methods. Class members may be notified of the pendency of this action by mail, email, internet postings, and/or publication.

56. **Common Questions of Law or Fact:** There are common questions of law and fact as to Plaintiff and all other similarly situated persons, which predominate over questions affecting only individual Class members, including, without limitation:

    a) Whether Defendants' representations and omissions about Zelle are false, misleading, deceptive, or likely to deceive;

    b) Whether Defendants misrepresented the NSF and overdraft fee risks of using the Zelle service;

    c) Whether Plaintiff and the Class members were damaged by Defendants' conduct;

    d) Whether Defendants' actions violated the consumer protection statute invoked herein; and

  e)  Whether Plaintiff is entitled to a preliminary and permanent injunction enjoining Defendants' conduct.

57. **Predominance of Common Questions:** Common questions of law and fact predominate over questions that affect only individual members of the Classes. The common questions of law set forth above are numerous and substantial and stem from Defendants' uniform practices applicable to each individual Class member. As such, these common questions predominate over individual questions concerning each Class member's showing as to his or her eligibility for recovery or as to the amount of his or her damages.

58. **Typicality:** Plaintiff's claims are typical of the claims of the other members of the Class because, among other things, Plaintiff and all Class members were similarly injured through Defendants' uniform misconduct as alleged above. As alleged herein, Plaintiff, like the members of the Classes, was deprived of monies that rightfully belonged to him. Further, there are no defenses available to Defendants that are unique to Plaintiff.

59. **Adequacy of Representation:** Plaintiff is an adequate class representative because he is fully prepared to take all necessary steps to represent fairly and adequately the interests of the members of the Classes, and because their interests do not conflict with the interests of the other Class members they seek to represent. Moreover, Plaintiff's attorneys are ready, willing, and able to fully and adequately represent Plaintiff and the members of the Classes. Plaintiff's attorneys are experienced in complex class action litigation, and they will prosecute this action vigorously.

60. **Superiority:** The nature of this action and the claims available to Plaintiff and members of the Classes make the class action format a particularly efficient and appropriate procedure to redress the violations alleged herein. If each Class member were required to file an individual lawsuit, Defendants would necessarily gain an unconscionable advantage since it would

be able to exploit and overwhelm the limited resources of each individual Plaintiff with its vastly superior financial and legal resources. Moreover, the prosecution of separate actions by individual Class members, even if possible, would create a substantial risk of inconsistent or varying verdicts or adjudications with respect to the individual Class members against Defendants, and which would establish potentially incompatible standards of conduct for Defendants and/or legal determinations with respect to individual Class members which would, as a practical matter, be dispositive of the interests of the other Class members not parties to adjudications or which would substantially impair or impede the ability of the Class members to protect their interests. Further, the claims of the individual members of the Classes are not sufficiently large to warrant vigorous individual prosecution considering all of the concomitant costs and expenses attending thereto.

## CAUSES OF ACTION

### COUNT I
**Violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA")**
**Fla. Stat. § 501.201, *et seq*.**
**(On Behalf of Plaintiff and the Classes, Against Defendant Early Warning Systems, Inc. ("Zelle") Only)**

61. Plaintiff repeats and realleges the above allegations as if fully set forth herein.

62. This cause of action is brought pursuant to the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201, *et seq*. The stated purpose of the FDUTPA is to "protect the consuming public … from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202(2).

63. Plaintiff and members of the classes are "consumers" as defined by Fla. Stat. § 501.203(7).

64. Zelle engaged in "trade or commerce" as defined by Fla. Stat. § 501.203(8) by offering the Zelle money transfer services through its website and mobile app.

65. As described herein, Zelle's misrepresentations that it provides free money transfer services via Zelle through its website and mobile app constitutes an unconscionable, unfair and/or deceptive act in trade or commerce in violation of Fla. Stat. § 501.201.

66. As described herein, Zelle's material omission that Zelle may operate as a credit device when a Zelle transfer occurs despite insufficient funds on an account constitutes an unconscionable, unfair and/or deceptive act in trade or commerce in violation of Fla. Stat. § 501.201.

67. Zelle is aware of TD Bank's practice of assessing NSF and overdraft fees on its accountholders' Zelle transactions; Zelle's marketing and representations that Zelle transfers from consumers' accounts are free are therefore false.

68. Zelle's material omission that Zelle may operate as a credit device when a Zelle transfer occurs despite insufficient funds on an account is deceptive because of Zelle's marketing and representations that Zelle money transfers moves funds already possessed and owned by the accountholder.

69. Zelle's deceptive misrepresentations of the material risks of the Zelle service, including the risk of incurring expensive NSF and overdraft fees, is a practice that is likely to mislead a consumer acting reasonable under the circumstances, to the consumer's detriment.

70. As a direct and proximate result of Zelle's unfair, unconscionable, and/or deceptive acts or practices, Plaintiff and members of the Class have been harmed and suffered actual damages.

## COUNT II
### Negligent Misrepresentation
### (On Behalf of Plaintiff and the Classes, Against Defendant TD Bank, N.A.)

71. Plaintiff repeats and realleges the above allegations as if fully set forth herein.

72. Defendant TD Bank negligently represented that the Zelle service is "free" to transfer an accountholder's own money.

73. Defendant TD Bank, in promoting and marketing Zelle to its customers as an additional service, had a duty of care to inform its customers of material features and risks of the Zelle service, including that Zelle transfers may operate as a credit device and may risk incurring NSF and overdraft fees. These are material facts that are only known by TD Bank and Zelle, but it was never disclosed to TD Bank's customers. Further, TD Bank receives a financial benefit when it assesses NSF and overdraft fees on Zelle transfers.

74. TD Bank made misrepresentations of material fact that were false, namely by repeatedly marketing Zelle as "free for TD customers" to transfer their own funds because, in reality, Zelle transfers cost customers $35 when TD Bank assesses NSF and/or overdraft fees on Zelle transactions and Zelle operates as a credit device when an account has insufficient funds.

75. TD Bank knows its misrepresentations about Zelle are material to the reasonable consumer.

76. TD Bank knew and intended that Plaintiff and Class members would rely upon its misrepresentations when deciding whether or not to use Zelle to transfer account funds.

77. TD Bank was negligent because it knew or should have known that its representations in marketing materials about the Zelle service being "free" are inaccurate and misleading.

78. TD Bank omitted the fact that Zelle may operate as a credit device when there are insufficient funds in a customer's account, despite claiming that Zelle transfers "your own money."

79. Plaintiff and Class members justifiably acted in reliance upon TD Bank's false and misleading statements by downloading and using Zelle to transfer account funds.

80. Neither Plaintiff nor any reasonable TD Bank customer would have used Zelle to transfer account funds if they knew that it wasn't actually "free."

81. As a direct and proximate result of TD Bank's misrepresentations, Plaintiff and members of the Class were induced into using the Zelle service and have been harmed and suffered actual damages in the amount of NSF and/or overdraft fees incurred as a result of a Zelle transfer.

82. Plaintiff seeks all available remedies, damages, and awards as a result of Defendant's negligent misrepresentations.

### COUNT III
### Breach of Contract Including the Covenant of Good Faith and Fair Dealing
### (On Behalf of Plaintiff and the Classes, Against Both Defendants)

83. Plaintiff repeats and realleges the above allegations as if fully set forth herein.

84. Plaintiff and members of the Classes contracted with Defendants for checking account services, as embodied in the Deposit Agreement. In marketing and during the sign-up process, Defendants repeatedly promises Zelle as a vehicle for simple, fast and *free* money transfers for consumers.

85. As described herein, Defendants breached the terms of the contract and promises that Zelle is free, no-fee way for accountholders to transfer money.

86. Further, Florida mandates that an implied covenant of good faith and fair dealing govern every contract. For banking transactions, this is also mandated by the Uniform Commercial

Code that has been adopted in each state. The covenant of good faith and fair dealing constrains Defendants' discretion to abuse self-granted contractual powers.

87. This good faith requirement extends to the manner in which a party employs discretion conferred by a contract.

88. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—not merely the letter—of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form. Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

89. Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes his conduct to be justified. A lack of good faith may be overt or may consist of inaction, and fair dealing may require more than honesty. Other examples of violations of good faith and fair dealing are willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.

90. Defendants breached the covenant of good faith and fair dealing as explained herein.

91. Each of Defendants' actions were done in bad faith and was arbitrary and capricious.

92. Plaintiff and members of the Classes have performed all of the obligations imposed on them pursuant to the Bank's agreements.

93. Plaintiff and members of the putative Classes have sustained monetary damages as a result of each of Defendants' breaches.

## COUNT IV
### Unjust Enrichment
### (In the Alternative to COUNT III)
### (On Behalf of Plaintiff and the Classes, Against Both Defendants)

94. Plaintiff repeats and realleges the above allegations as if fully set forth herein.

95. This count is brought solely in the alternative. Plaintiff acknowledges that his breach of contract claim cannot be tried along with unjust enrichment.

96. To the detriment of Plaintiff and the Classes, Defendants has been, and continues to be, unjustly enriched as a result of its deceptive and wrongful conduct alleged herein.

97. Plaintiff and the Classes conferred a benefit on Defendants when they paid Defendants the fees that were not disclosed or allowed for in the Deposit Agreement or marketing materials.

98. Defendants unfairly, deceptively, unjustly, and/or unlawfully accepted said benefits, which under the circumstances, would be unjust to allow Defendants to retain.

99. Plaintiff and the Classes, therefore, seek disgorgement of all wrongfully obtained fees received by Defendants as a result of its inequitable conduct as more fully stated herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Classes, demands a jury trial on all claims so triable and judgment as follows:

A. Certifying the proposed Classes, appointing Plaintiff as representative of the Classes, and appointing counsel for Plaintiff as lead counsel for the respective Classes;

B. Declaring that Defendants' policies and practices as described herein constitute a breach of contract, a breach of the covenant of good faith and fair dealing or unjust enrichment,

that Zelle's conduct is a violation of the Florida Deceptive and Unfair Trade Practices Act, and/or TD Bank negligently misrepresented the Zelle service to its customers;

      C.      Enjoining Defendants from the wrongful conduct as described herein;

      D.      Awarding restitution of all fees at issue paid to TD Bank by Plaintiff and the Classes as a result of the wrongs alleged herein in an amount to be determined at trial;

      E.      Compelling disgorgement of the ill-gotten gains derived by Defendants from its misconduct;

      F.      Awarding actual and/or compensatory damages in an amount according to proof;

      G.      Punitive and exemplary damages;

      H.      Awarding pre-judgment interest at the maximum rate permitted by applicable law;

      I.      Reimbursing all costs, expenses, and disbursements accrued by Plaintiff in connection with this action, including reasonable attorneys' fees, costs, and expenses, pursuant to applicable law and any other basis; and

      J.      Awarding such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff and all others similarly situated hereby demand trial by jury on all issues in this Class Action Complaint that are so triable.

Dated: July 11, 2022                                        Respectfully submitted,

                                                                             **SHAMIS & GENTILE, P.A.**

                                                                             By: */s/ Andrew J. Shamis*
                                                                             Andrew J. Shamis, Esq.
                                                                             Florida Bar No. 101754
                                                                             ashamis@shamisgentile.com
                                                                             Edwin E. Elliott, Esq.
                                                                             Florida Bar No. 1024900
                                                                             edwine@shamisgentile.com
                                                                             14 NE 1st Avenue, Suite 705
                                                                             Miami, Florida 33132

(t) (305) 479-2299

**EDELSBERG LAW, P.A.**
Scott Edelsberg, Esq.
Florida Bar No. 0100537
Christopher Gold, Esq.
Florida Bar No. 088733
scott@edelsberglaw.com
chris@edelsberglaw.com
20900 NE 30th Ave., Suite 417
Aventura, FL 33180
Office: (786) 289-9471
Direct: (305) 975-3320
Fax: (786) 623-0915

*Counsel for Plaintiff and the Proposed Class*